UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>KENT POWELL and HEIDI POWELL<br><br>　　　　　　　　Debtors.<br>―――――――――――――――<br>UNITED STATES DEPARTMENT OF EDUCATION,<br><br>　　　　　　　　Appellants,<br><br>　　　　v.<br><br>KENT POWELL and HEIDI POWELL.<br><br>　　　　　　　　Appellees. | CASE NO. C13-0465JLR<br><br>Bankruptcy No. 12-11140KAO<br><br>ORDER DENYING BANKRUPTCY APPEAL AND AFFIRMING THE JUDGMENT OF THE BANKRUPTCY COURT |

Before the court is Appellant United States Department of Education's ("DOE") appeal from a final judgment of the United States Bankruptcy Court (Appeal (Dkt. # 10)). After holding a bench trial, the bankruptcy court discharged Appellee Heidi Powell's

ORDER - 1

student loan debt in full.  Having considered these motions, as well as all papers filed in support and opposition, the court AFFIRMS the judgment of the bankruptcy court and DENIES this appeal.

## I.     BACKGROUND

On July 8, 2006, Heidi Powell signed a federal Direct Parent PLUS Loan for $68,782.11.  (Ruling (Dkt. # 16-1) at 5.)  The purpose of the loan was to allow her daughter to study jewelry design at the Academy Arts University in San Francisco.  (*Id.*)  By November 20, 2012, due to a combination of missed payments and accrued interest, the amount due on the loan had risen to $91,295.10.  (*Id.*)

Heidi and Kent Powell filed for Chapter 7 bankruptcy on February 8, 2012.  (*Id.* at 14.)  They received a general discharge—which included a discharge of over $60,000 in credit card debt—on May 29, 2012.  *Id.*  In addition, the Powells filed an adversarial action against DOE on May 23, 2012 seeking discharge of Mrs. Powell's Parent PLUS loan under 11 U.S.C. § 523(a)(8).  (*Id.*)

The bankruptcy court held a bench trial on December 4, 2012.  (*Id.* at 4.)  The bankruptcy court heard testimony from Mrs. Powell, Mr. Powell, and Mrs. Powell's psychiatrist, Dr. Joshua Cohen.  (*See generally* TT (Dkt. # 16-2); Cohen TT (Dkt. # 16-3).)  The bankruptcy court found that the Powells satisfied all three prongs of the *Brunner* "undue hardship" test and fully discharged the loan.  (Ruling at 4.)

On appeal, DOE argues that certain factual findings by the bankruptcy court are clearly erroneous, that the Powells did not carry their burden to prove all three prongs of

ORDER - 2

the test, and that the bankruptcy court applied the wrong legal standard with respect to the third "good faith" prong of the *Brunner* test.  (Appeal at 7.)

## II.   ANALYSIS

### A.   Legal Standard Under Brunner

Student loan obligations are presumptively nondischargeable in bankruptcy, absent a showing of "undue hardship."  11 U.S.C. § 523(a)(8).  To determine undue hardship, the Ninth Circuit has adopted the three-part test established by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987).  *See In re Pena*, 155 F.3d 1108, 1111 (9th Cir. 1998).  Under this test, "[t]o obtain a discharge of a student loan obligation, the debtor must prove:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans."

*Brunner,* 831 F.2d at 396 (2d Cir. 1987).  The "burden of proving undue hardship is on the debtor, and the debtor must prove all three elements before discharge can be granted." *In re Rifino*, 245 F.3d 1083, 1088 (9th Cir. 2001).

### B.   Standard of Review

The bankruptcy court's application of the legal standard to determine undue hardship is reviewed de novo.  *In re Rifino*, 245 F.3d 1083, 1087 (9th Cir. 2001).  De

ORDER - 3

novo review is independent and gives no deference to the trial court's conclusion. *In re Roth*, 490 B.R. 908, 915 (B.A.P. 9th Cir. 2013).

The bankruptcy court's factual findings are reviewed for clear error. *Id.*; *see also In re Rifino*, 245 F.3d at 1086. Review for clear error is "significantly deferential." *Baker v. Mereshian*, 200 B.R. 342, 345 (9th Cir. BAP 1996). The reviewing court should not reverse unless it is left with "a definite and firm conviction that a mistake has been committed." *Id.* (internal quotation omitted). Further, the reviewing court must give due regard to the opportunity of the bankruptcy court to judge the credibility of witnesses. *In re Roth*, 490 B.R. at 915.

Regarding each individual prong of the test, the Ninth Circuit recently held that the bankruptcy court's determination of the third "good faith" prong is reviewed for clear error. *Hedlund v. Educ. Res. Inst. Inc.*, 718 F.3d 848, 854 (9th Cir. 2013) (collecting cases). Since *Hedlund* did not address the standard of review for the first two prongs, this standard remains open for debate.[1] Because this court would affirm the bankruptcy court's decisions as to the first two prongs regardless of whether the review is de novo or clear error, this court declines to decide the issue here.

---

[1] Language in other Ninth Circuit precedent suggests that clear error review is applicable to the individual prongs. *See, e.g.*, *In re Rifino*, 245 F.3d at 1088-89; *Pena,* 155 F.3d at 1114 (emphasis added); *Mason,* 464 F.3d at 885. On the other hand, the Bankruptcy Appellate Panel of the Ninth Circuit recently held that de novo review applies to each prong. *See In re Roth*, 490 B.R. at 915-16 (citing *Educ. Credit Mgmt. Corp. v. Mosko,* 515 F.3d 319, 324 (4th Cir.2008); *Brightful v. Pa. Higher Educ. Assistance Agency,* 267 F.3d 324, 327 (3d Cir.2001)). Decisions by a Bankruptcy Appellate Panel, however, are not binding on district courts. *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990).

ORDER - 4

C.     **Inability to Maintain a Minimal Standard of Living**

The first prong of the *Brunner* test requires a debtor to prove that she "cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Brunner,* 831 F.2d at 396. This prong requires more than a showing of tight finances. *In re Nascimento*, 241 B.R. 440, 445 (B.A.P. 9th Cir. 1999). In defining undue hardship, "courts require more than temporary financial adversity but typically stop short of utter hopelessness." *Id.* The proper inquiry is "whether it would be 'unconscionable' to require the Debtor to take steps to earn more income or reduce her expenses." *Id.*

DOE argues that the bankruptcy judge clearly erred in finding that Mrs. Powell is disabled to the point of being unable to work. (Appeal at 20-21.) From DOE's viewpoint, since Mrs. Powell is capable of taking steps to earn more income, the Powells' bid fails at *Brunner* step one.

The bankruptcy court conclusion that "Ms. Powell has mental disabilities which prevent her from working" is amply supported by the testimony of Mrs. Powell and the testimony of her psychiatrist, Dr. Cowen. (Ruling at 20) Mrs. Powell testified at length about her health issues, including her post-traumatic stress disorder and the incidents that triggered it, depression, anxiety, memory problems, trouble sleeping, panic attacks, and epilepsy, as well as the various therapy and medications she has tried, and her adverse reactions to these medications. (TT 95- 99, 103-106.) Dr. Cohen confirmed that Mrs. Powell suffers from "multiple psychiatric diagnoses, including a post-traumatic stress disorder, a generalized anxiety disorder, and an adjustment disorder." (Cohen TT at 7-8;

ORDER - 5

Ruling at 12). He testified that Mrs. Powell has "difficulty focusing her thoughts, has persistent anxiety and depression, and marked social problems which impair her ability to function normally." (Ruling at 13; *see also* Cohen TT at 9-12.) Dr. Cohen's medical record for Ms. Powell states: "It appears quite evident that her persistent mental illness and her symptoms make it impossible for her to maintain gainful employment in the foreseeable future." (Cohen TT at 10.) Dr. Cohen reiterated at trial: "I do believe that it would be impossible for her to maintain gainful employment." (*Id.*) A reviewing court must give due regard to the opportunity of the bankruptcy court to judge the credibility of witnesses. *See In re Roth*, 490 B.R. at 915.

DOE argues that evidence showing Mrs. Powell's participation in "various leisure activities" and past attempts at employment should carry the day. (Appeal at 21 ) Specifically, DOE emphasizes that Mrs. Powell in the past ran errands for her elderly parents, temporarily obtained work as a telemarketer, scheduled presentations for Mr. Powell's franchise, and now participates in "travel, gambling, and eating out" and "goes dancing." (*Id.* at 11.) The bankruptcy court considered these same facts, however, and concluded that DOE's position "is an exaggeration of the evidence." (Ruling at 20.)

This court is inclined to agree.[2] Dr. Cowen's medical diagnosis of Mrs. Powell remains unrebutted, and it goes without saying that there is a significant gap between

---

[2] For instance, DOE's reference to "dancing" as one of Mrs. Powell's normal activities is apparently based solely on the following cross-examination question: "Q: You occasionally go dancing? A: Once a year." (TT at 130.)

ORDER - 6

running errands and maintaining meaningful employment, between dining out and holding a steady job.

Moreover, DOE overlooks the fact that the bankruptcy court did not base its finding on Mrs. Powell's mental problems alone. The bankruptcy court also relied on Mrs. Powell's absence from the job market for a decade, as well as her lack of education, work experience, and marketable skills. (*See* Ruling at 11, 13.) The DOE does not dispute any of that evidence, all of which is relevant to Mrs. Powells' ability to hold meaningful employment, both now and in the future. As such, the bankruptcy court's finding that Mrs. Powell is unable to work is not clearly erroneous.

Considering the remainder of the bankruptcy court's factual findings, this court concludes that the Powells meet the first prong of the *Brunner* test. The Powells report monthly expenses of $4,488.48. (Schedule J (Dkt. # 11-5).) The bankruptcy court reviewed these expenses and found them to be "reasonable." (Ruling at 15.) DOE does not challenge that finding, (*see* Appeal at 20 n. 7), and neither will this court. *See   In re Mason*, 464 F.3d 878, 882 (9th Cir. 2006) ("The method for calculating a debtor's average monthly expenses is a matter properly left to the discretion of the bankruptcy court.")

The Powells report a net monthly income of $3,547. (Schedule J.) As discussed in Section D, *infra*, the bankruptcy court's finding that Mr. Powell has maximized his

ORDER - 7

current income is not clear error.[3]  As such, even without the loan payment, the Powells face a monthly deficit of $941.48.  The monthly loan payment is $434.99 (Ruling at 6), which would increase the deficit to $1376.47.  Therefore, the Powells have shown that they cannot maintain a minimal standard of living if they are forced to repay the loan.  The first prong of the *Brunner* test is met.

**D.      Inability to Earn More Income in the Future**

Under the second prong of the *Brunner* test, "the determinative question is whether the debtor's inability to pay will, given all we know about the salient features of her existence, persist throughout a substantial portion of the loan's repayment period." *In re Nys*, 446 F.3d 938, 946 (9th Cir. 2006).  Because future income is difficult to predict, "courts have required debtors to present 'additional circumstances' to prove that their present financial situation will persist well into the future." *Id.* at 945.  These "additional circumstances" are meant to be objective factors courts can consider when trying to predict the debtor's future income.  *Id.*  There is no requirement that the additional circumstances be "exceptional" in the sense that the debtor's circumstances must be more compelling than that of an ordinary person in debt.  *See id.* at 946.  Rather, "[u]ndue hardship requires only a showing that the debtor will not be able to maintain a minimal standard of living now and in the future if forced to repay her student loans." *Id.*

DOE argues that the bankruptcy court's finding that "Mr. Powell has maximized his earning potential" (Ruling at 21) is clear error. (Appeal at 22-23.)  In DOE's view,

---

[3] The loan was taken out in Mrs. Powell's name only.  However, because the Powells were married at the time, the debt is a community obligation. (Ruling at 19).  Therefore, evidence of Mr. Powell's income is relevant to the *Brunner* test.

ORDER - 8

since Mr. Powell's income will increase in the future, the Powells have failed to demonstrate that their current inability to pay will to persist throughout a substantial portion of the loan's repayment period. *Id.*

Mr. Powell testified that he was employed as a sales representative selling phonebook advertisements from 1997 until 2010. (TT 20-22, 27-30; Ruling 8-10.) In 2010, he attempted to start his own business. (*Id.*) This franchise was unsuccessful, and Mr. Powell returned to selling phonebook advertisements (with a different company) in 2011. (*Id.*) With respect to Mr. Powell's current field of employment, the bankruptcy court found:

> "Mr. Powell has maximized his earnings in a potentially dwindling business. Given the expansion of the internet, I do not see how he will attain any dramatic increase in his salary in the future. In fact, I conclude that he is doing exceedingly well in this field. He's paid solely on a commission basis, so his income could drop precipitously at any time. His expenses, including gas, can increase dramatically with the market. The car he uses for business is old and has mechanical problems."

(Ruling at 21-22.)

DOE argues that Mr. Powell cannot have maximized his earning potential because his departure in 2010 to start his own business was "voluntary," there has been a "documented increase" in his income since he returned his original employment of selling advertisements, and Mr. Powell himself testified that he expects his income to increase in the future. (Appeal at 23.)

However, as the bankruptcy court pointed out, Mr. Powell's income as a sales representative was already decreasing significantly before—and indeed partially precipitated—his "voluntary departure" in 2010. (*See* Ruling at 8-9 (finding Mr.

ORDER - 9

Powell's salary decreased from about $148,000 in 2008 to $88,000 in 2010).) The "documented increase" in income since Mr. Powell's return to the phonebook business appears to have been marginal: Mr. Powell's commissions increased from $54,330 in 2011 to only $56,056 in 2012. (*See* TT at 32.) And Mr. Powell's self-admittedly "hopeful" testimony regarding income does not negate the realities of declining customer demand and uncertain expenses identified by both the bankruptcy court and Mr. Powell. (*See* Ruling at 10-11, 20; TT at 47 ("Ten years ago, when people wanted a service, it was almost guaranteed they went to the phone book to get the number for whatever reason. Now they can go to the internet and other sources. So the opportunity isn't as great."); *id.* at 65.) Therefore, the bankruptcy court's conclusion that Mr. Powell's income is unlikely to increase appreciably throughout the life of the loan was not clear error.

Moreover, the Ninth Circuit has identified a list of one dozen nonexclusive "additional circumstances" that courts may consider under the second prong, only one of which concerns maximized income.[4] The bankruptcy court's prong two determination relied on several of these factors in addition to its finding that Mr. Powell had maximized earnings in his current field of work. Specifically, the bankruptcy court recognized that:

---

[4] These factors include: "(1) Serious mental or physical disability of the debtor . . . which prevents employment or advancement; (2) The debtor's obligations to care for dependents; (3) Lack of, or severely limited education; (4) Poor quality of education; (5) Lack of usable or marketable job skills; (6) Underemployment; (7) Maximized income potential in the chosen educational field, and no other more lucrative job skills; (8) Limited number of years remaining in [the debtor's] work life to allow payment of the loan; (9) Age or other factors that prevent retraining or relocation as a means for payment of the loan; (10) Lack of assets, whether or not exempt, which could be used to pay the loan; (11) Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; (12) Lack of better financial options elsewhere." *In re Nys*, 446 F.3d at 947.

ORDER - 10

Mr. Powell had a severely limited and poor quality of education (Ruling at 8 ("Mr. Powell has a high school education and a one-year business degree. He has no college education.")); Mr. Powell's and Mrs. Powell's health problems and advanced ages result in a limited number of years remaining in their work lives to allow loan repayment and prevent retraining or relocation (*id.* at 26-27 ("Both debtors are 56 years old and both have health problems.")); the Powells lack assets that could be used to pay the loan (*id.* at 15, 26-27 ("The Powells have no retirement and no significant assets.")); and the Powells face potentially increasing expenses that outweigh any potential increases in their income (*id.* at 22 ("His expenses, including gas, can increase dramatically with the market."); *see also* TT at 33-35 (listing the Powells' increasing health care costs)). The bankruptcy court also found, as discussed in Section C, *supra*, that Mrs. Powell will continue to be unable to work.

Taking into consideration all of these "additional circumstances," this court concludes that the Powells have shown that their inability to pay will persist throughout a substantial portion of the loan's repayment period. Therefore, the second prong of the *Brunner* test is met.

**E.     Good Faith Efforts to Repay**

The third and final prong of the *Brunner* test requires a debtor to prove that she "has made good faith efforts to repay the loans." *Brunner,* 831 F.2d at 396. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." *Hedlund*, 718 F.3d at 852. Courts also examine: "1) whether the debtor has made any payments on the loan prior to filing for discharge . . . , 2) whether

ORDER - 11

the debtor has sought deferments or forebearances, 3) the timing of the debtor's attempt to have the loan discharged, and 4) whether the debtor's financial condition resulted from factors beyond her reasonable control, as a debtor may not willfully or negligently cause her own default." *In re Roth*, 490 B.R. at 917 (internal citations omitted). Under *Hedlund*, the bankruptcy court's good faith determination is reviewed for clear error. 718 F.3d at 852.

Applying these factors, the bankruptcy court found it was in the Powells' favor that they made a year and a half of loan payments, that they sought out and received a deferment for "economic hardship," and that they did not immediately attempt to have the loan discharged. (Ruling at 22). DOE does not dispute those findings.

Instead, DOE argues that the bankruptcy court clearly erred in finding that the Powells had minimized their expenses during their period of repayment.[5] (Appeal at 25-28.) In DOE's view, the evidence concerning the Powells' "discretionary spending" in three areas—travel, dining, and (allegedly) gambling—compels a finding of no good faith.[6] (*Id.*) This court does not agree.

---

[5] DOE also argues that the Powells did not maximize their joint income during the period of repayment. As discussed in Sections C and D, *supra*, the bankruptcy court's finding that the Powells maximized their joint income is not clearly erroneous.

[6] DOE also argues that the bankruptcy court misapplied the legal standard by considering the Powells' current (as opposed to historical) financial situation. (Reply (Dkt. # 17) at 2-4.) The good faith determination is at heart a retrospective inquiry—it requires examination of the debtor's past financial choices. *See, e.g.*, *In re Roth*, 49 B.R. at 917-18; *In re Brunner*, 46 B.R. 752, 753 (S.D.N.Y. 1985); *Marcotte v. Brazos Higher Educ. Serv. Corp.*, 455 B.R. 460, 472 (Bankr. D.S.C. 2011) ("[A] determination of good faith under part three necessarily includes a retrospective analysis."). Otherwise, the third prong would be cumulative of the first two prongs. Here, although the bankruptcy court reviewed the the Powells' current expenses, the bankruptcy court's good faith analysis as a whole also

ORDER - 12

First, regarding travel expenses, the bankruptcy court appropriately declined to find fault with the Powells for travel that occurred before they stopped making payments on the loan. (*See* Ruling at 16-17.) The court concurs with the bankruptcy court's assessment that the Powells' weekend trip to Las Vegas in 2009 was a "questionable choice," but at the end of the day, this indiscretion is not enough to tip the balance of good faith against the Powells. (*Id.*)

Second, regarding dining expenses, the bankruptcy court did not clearly err in finding the expenses were "not excessive." According to DOE's calculations, the Powells incurred approximately $833 per month in expenses dining out in 2010 and approximately $667 per month dining out in 2011. (Ruling at 15; *see also* Tr. Ex. D-3 (Dkt. # 11-20).) Mr. Powell testified that his job selling advertisements requires him to travel throughout several counties, that he frequently must take his meals on the road, and that he is not reimbursed for those expenses. (TT at 42; Ruling at 10.) Crediting this testimony, the bankruptcy court found that the dining expenses "are not excessive given that during the period studied, Mr. Powell was on a new sales job trying to build up his client base." (Ruling at 24.)

DOE argues that the bankruptcy court misinterpreted DOE's calculations, and that "those travel expenses lunches were expressly excluded" from the sum. (Appeal at 25.) It seems, however, that DOE's method of excluding work expenses was merely to

---

took into consideration the Powells' past financial activities. (*See* Ruling at 23-24.) As such, the bankruptcy court did not misapply the legal standard.

ORDER - 13

exclude all meal charges less than $10. (TT at 171 ("I highlighted Exhibit D4 to indicate all charges at eating establishments over $10.")) DOE provides no justification for its selection of this arbitrary minimum. Accordingly, it appears that the $10 minimum represents DOE's own judgment about what constitutes a reasonable business lunch expense rather than Mr. Powell's actual business expenses.

"Good faith, however, should not be used as a means for courts to impose their own values on a debtor's life choices." *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1310 (10th Cir. 2004). A quick review of a few of the Powells' credit card statements shows that a $10 minimum excludes few dining purchases. (*See, e.g.*, Ex. D-3A.) Therefore, the bankruptcy court did not clearly err in concluding that some appreciable portion of the dining expenses were work-related rather than "discretionary" spending.

Third, regarding DOE's allegations of gambling, the bankruptcy court correctly concluded: "I don't find any real evidence of gambling after 2008, and there's no evidence of any big gambling losses." (Ruling at 24.) Although the Powells financial statements show that they regularly visited two casinos during the relevant time period, Mrs. Powell testified that the credit card charges during those visits were for restaurant meals. (TT at 128-29, 134 ) DOE points out that the Powells' casino visits frequently coincided with ATM withdrawals. (Appeal at 15-16.) Almost all of the coincidences that DOE points to, however, occurred before the Powells stopped making loan payments; DOE shows only two such withdrawals in 2009 and one in 2010. (Appeal at 15.)

In light of such circumstantial evidence, it may have been permissible for the bankruptcy court to infer that the Powells' continued gambling after they stopped making payments on their loans. But this court cannot say it was clear error to do otherwise. Indeed, Mrs. Powell testified that she no longer plays cards because "we don't have extra money for those type of things." (TT at 130.) This court must give due regard to the opportunity of the bankruptcy court to judge the credibility of witnesses. *In re Roth*, 490 B.R. at 915. Similarly, in the absence of evidence of gambling losses, the bankruptcy court did not err in discounting gambling activities that occurred while the Powells were current on their loan payments.

In sum, although this court may have viewed certain evidence regarding the Powells expenses more skeptically, the bankruptcy court's finding was not clear error. *See id.*, 490 at 915 ("The reviewing court may not reverse simply because it is convinced it would have decided the case differently."); *Anderson*, 470 U.S. at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). In *Hedlund*, the district court reversed the bankruptcy court's finding of good faith because it found the debtor's expenses to be "immoderate." 718 F.3d at 855. The Ninth Circuit then reversed the district court because, even though the debtor "had not fully minimized his expenses, the [bankruptcy] court permissibly interpreted the excess expenses as marginal." The Ninth Circuit stated: "Although this evidence could be interpreted to support a finding of lack of good faith, it was not so strong as to demand such a finding." *Id.* The very same principle applies here.

ORDER - 15

Since the bankruptcy court did not clearly err in finding that the Powells minimized their expenses, the third prong of *Brunner* is met.

### III.   CONCLUSION

For the foregoing reasons, the court AFFIRMS the judgment of the bankruptcy court and DENIES this appeal (Dkt. # 6).

Dated this 8th day of October, 2013.

JAMES L. ROBART
United States District Judge

ORDER - 16